CARPENTER v. STATE.

Opinion delivered December 2, 1893.

1. *Verdict—Degree of murder.*

Mansf. Dig. sec. 2284, which requires that "the jury shall, in all cases of murder, find by their verdict whether he be guilty of murder in the first or second degree," was not repealed by the criminal code.

2. *Admissibility of deposition of deceased witness.*

The deposition of a witness, since deceased, taken before the examining court, is not admissible on the trial of a criminal cause where it does not appear, either from the magistrate's certificate or other competent evidence, that defendant was present and had the privilege of cross-examination, although the deposition contains the headings "Cross-examination" and "Re-direct examination."

3. *Evidence—Former statements.*

It is only when a witness has been impeached that it is admissible to show that former statements by him, under oath or otherwise, were similar to those made by him on the trial.

4. *Joint crime—Evidence.*

Upon the theory of the State that the murder was committed by defendant and his brother, evidence as to a conversation between the latter and deceased the day before the killing relating to the ground of the quarrel is competent for the defense.

Appeal from Ashley Circuit court.

GEORGE C. SHELL, Judge.

## STATEMENT BY THE COURT.

The defendant and appellant, Ben L. Carpenter, was indicted at the January term, 1892, of the Ashley circuit court, and in said court, at its following August term, was tried for the murder of H. J. Hannibal, on the following indictment (omiting the formal parts), to-wit: " The said Ben L. Carpenter, in the county and State aforesaid, on or about the 28th day of September, 1891, did feloniously, wilfully and with malice aforethought and with premeditation and deliberation, kill and murder one H. J. Hannibal, then and there being, by shooting him, the said H. J. Hannibal, with a gun, then and there loaded with gunpowder and leaden bullets, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Arkansas."

The jury returned into the court the following verdict, to-wit : " We, the jury, find the defendant guilty of the charge alleged in the indictment ;" and upon this verdict the court subsequently rendered judgment and sentence of death upon the defendant. This forms the first ground for the motion for a new trial.

In the progress of the trial, the testimony of Sallie Hannibal, widow of deceased, as taken down by the justice of the peace, in the examining court, and as certified by him, after proof of her death, was by the State offered in evidence over the objection of the defendant, (except that portion relative to conduct of and conversation between the deceased and W. O. Carpenter, brother of the defendant, on the day before the killing), the defendant insisting first, that the whole of said statement was inadmissible, and secondly, being admitted, the part relating to the conduct of, and conversation between, deceased and W. O. Carpenter on the day previous to the day of the killing should also be admitted. The court, however, excluded the part aforesaid, and admitted the remainder. The certificate of the justice of

the peace to the statements of witnesses taken down by him when sitting as an examining court, among others, those of Sallie Hannibal, is as follows, to-wit : "I, W. S. Lawson, an acting and duly commissioned justice of the peace in and for said county, hereby certify that the above and foregoing eighty-five pages contain the substance of the evidence in the examination of the charge of murder against W. O. and B. L. Carpenter for the murder of H. J. Hannibal on the 28th day of September, 1891.

Witness my hand this 3rd day of October, 1891.

(Signed) W. S. LAWSON, J. P."

The admission of this deposition was the third ground of motion for a new trial.

The court, also over the objection of defendant, refused to permit W. O. Carpenter to testify as to what occurred between himself and the deceased on the two days previous to the killing.

The testimony of Sallie Hannibal, thus excluded, is as follows, to-wit : "I heard the conversation on Sunday morning. They were fifty yards away. Mr. Hannibal told Mr. Carpenter that he could put the mules in the field if he wanted to, and Mr. Carpenter said, if he did, he would kill him, and Hannibal made no reply, but got over the fence into the cow-pen. He got over the cow-pen fence and went up to the gap, where Mr. Carpenter was standing, and offered to pay him damages. I heard the conversation. In a few minutes Mr. Carpenter walked off. Carpenter told him then he would put (up) the gap. Hannibal told him no, he should not ; he'd put it up next morning himself. He did not put it up next morning, because he did not have time. Mr. Carpenter was pretending to put it up. I don't know why he would not let Carpenter put up the gap."

The testimony of W. O. Carpenter thus excluded by the court, was as follows, to-wit: "That, on Sunday morning preceding the killing (on Monday following), he went down to his field and found that the deceased, Hannibal, had thrown down his fence which he (Carpenter) had repaired on Saturday before, and was putting it up when the said Hannibal came out and with threats and curses drove him away, and said he would kill him (Carpenter) if he tried to put up the fence." This exclusion of testimony forms the tenth and eleventh grounds of motion for new trial.

Hugh Estelle, a boy 15 years old, and at the time of the killing living with the deceased, was endorsed on the indictment as one of the prosecuting witnesses, but called by the defendant, and had (from his own statements) testified before the coroner's jury, wherein he had stated that the defendant, Ben L. Carpenter, had first shot the deceased twice with a shot gun, and then W. O. Carpenter had shot him three times with a pistol, whereas on the trial he testified that defendant did not shoot deceased at all, but that W. O. Carpenter did all the shooting, and explained the conflicting statements by saying that he was coerced by Mrs. Sallie Hannibal and Mrs. Bell to swear as he did before the coroner's jury, and that the same was false.

To bolster up the witness' testimony, the defendant offered to prove, by several other persons, that witness had stated to them separately, soon after the killing and on the same day, in language substantially as he testified on the trial. This testimony was not admitted by the court, and forms the ninth ground of motion for new trial.

The killing occurred early Monday morning, September, 28, 1891, about fifty or sixty yards from the house of deceased. The controversy between the Carpenter brothers and the deceased grew out of the acts of

the deceased in letting down the fence of the former, which was the division fence between their field and his cow-pen, or in making a gap in the same so as to let in the stock of deceased into the field of the Carpenters, there being there well grown crops of peas and other food for stock. The conflict between the witnesses for the State and those for the defendant consisted mainly in one party testifying that defendant shot deceased twice with a shot gun and his brother afterwards three times with a pistol, and that deceased was unarmed at the time ; and the other party testifying that defendant did not shoot deceased at all, but that his brother did all the shooting, and that deceased was armed with a pistol, and was attempting to shoot the brother, W. O. Carpenter.

This is all of the facts necessary here to state, and this is necessary only to show the bearing the excluded testimony might have had, and its exclusion may have had, upon the result of the trial.

The twelfth ground of motion for new trial was in the nature of newly discovered evidence as to the disqualification of juryman, J. W. Berry, but as the consideration of this question is unnecessary, and will probably not arise again, we withhold any opinion in relation thereto.

*Dan W. Jones & McCain* and *Geo. W. Norman* for appellant.

1. The jury shall in all cases of murder find by their verdict *the degree*. Mansf. Dig. sec. 2284. A verdict which does not find the degree of murder is fatally defective. 26 Ark. 323 ; 26 *id*. 534 ; *ib*. 614 ; 34 *id*. 649 ; 26 *id*. 230.

2. It was error to admit the alleged deposition of Sallie Hannibal (who was dead), taken before the examining court. 33 Ark. 539 ; 29 *id*. 22 ; 40 *id*. 461 ; 1 Gr. Ev. (3rd ed.) sec. 166 ; 1 Spencer (N. J.), 66.

3.   Instruction No. 10, given at the State's instance, is not in harmony with Nos. 1 and 2 previously given on part of defendant, and is misleading.

4.   J. W. Berry, a juror, should have been excused. Mansf. Dig. sec. 2238.

5.   It was error to refuse to admit the testimony of Mrs. Shell and others to bolster up the evidence of Hugh Estelle.   1 Starkie (6 Am. ed.), p. 186; 2 Phil. Ev. 445–6; 1 Gr. Ev. (3rd ed.) sec. 469.

6.   The court erred in excluding parts of the deposition of Sallie Hannibal as to the interview between deceased and W. O. Carpenter, and in excluding the testimony of Carpenter as to what happened Sunday morning preceding between witness and deceased.   13 Am. Rep. 492; 29 Ark. 261.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1.   Sec. 2284, Mansf. Dig., is not found in the criminal code.   See Cr. Code, secs. 254–5–9, 260, etc.   All laws inconsistent with it were repealed.   The code was intended as a complete system of criminal procedure, and supersedes all others.   10 Bush (Ky.), 299; 56 Ark. 20, dissenting opinion.   If the act of 1838 was impliedly repealed by the code, the common law would govern, and the verdict is good.   Under the common law a verdict of "guilty" is competent to mean guilty of all that the indictment well alleges.   1 Bish. Cr. Proc. sec. 1005*a* and cases cited; 26 Ark. 439.

2.   The deposition of Sallie Hannibal was admissible.   40 Ark. 454.

3.   A party cannot fortify his witness by such evidence as that offered.   10 Gray, 485; 1 Park. Cr. Rep. 147; 1 Clif. 98; Whart. Cr. Ev. sec. 492.

4.   There is no conflict between the tenth request for the State and the first and second for defense.

BUNN, C. J., (after stating the facts.) As to the first ground of motion for new trial, we are unable to see anything in section 2284, Mansfield's Digest (which requires juries in the trial of cases of murder to find the degree of murder) inconsistent with sections 254, 255, 259 and 260 of the criminal code, as originally numbered, or with any other section of same ; and while there may be a difference of opinion as to whether or not the code, in attempting to cover the whole ground of our criminal procedure, may not contain a provision tantamount to this section 2284 of the Digest, yet it must be confessed by all that the latter is more explicit, direct and definite than anything to be found in the code on the subject. We are of the opinion that the statute in question is not inconsistent with anything in the code, and further, that it is not repealed by implication. Besides, it has been so long recognized, acted upon and treated without question or controversy, as the law, and has in fact become so fixed and established as a part of our criminal jurisprudence that we should be loth to dispense with its most excellent use in our criminal practice. *Thompson* v. *State,* 26 Ark. 323 ; *Trammell* v. *State,* 26 *id.* 534 ; *Neville* v. *State,* 26 *id.* 614 ; *Ford* v. *State,* 34 *id.* 649 ; *Allen* v. *State,* 26 *id.* 333 ; *Porter* v. *State,* 57 *id.* 267. We are of opinion, therefore, that this ground of the motion for a new trial was well taken, and should have been sustained.

The admission of the deposition of the deceased witness, Sallie Hannibal, without some proof that the defendant was present and had the privilege of cross-examination, when her statement was made and taken down by the justice of the peace, we think, was improper. We do not think that the mere use of the heading "Cross-examination" and "Re-direct-examination" employed by the person taking down the statements, is sufficient to establish the fact that the defendant was present, and

1. Verdict should find degree of murder.

2. Admission of deposition of deceased witness.

cross-examined the witness. We are of the opinion, however, that the certificate of the justice of the peace, made in obedience to the law on the subject, is a sufficient authentication and proof of the fact that such was the substance of the testimony of the witness as given before him on the occasion, to make the deposition *prima facie* at least. Had his certificate shown that the defendant was present, or had that fact been shown by any other competent testimony, the deposition would have been admissible, in accordance with the rule adhered to in many decisions of this court. *Hurley* v. *State*, 29 Ark. 22; *Shackleford* v. *State*, 33 *id.* 539; *Dolan* v. *State*, 40 *id.* 461; *Sneed* v. *State*, 47 *id.* 180. The third ground of the motion for new trial was, for the reason stated, well taken and should have been sustained.

3. Proving former statements of witness.

As to the refusal of the court to admit testimony to bolster up the testimony of witness Hugh Estelle, which furnishes the ninth ground for the motion for new trial, the court can only state the rule (or rather an exception to the rule) to be that where an effort by the opposite side is made to impeach the witness under certain circumstances and on certain grounds, evidence is admissible to show that former statements of the witness, either under oath or not, were similar to those he makes on the trial. *Henderson* v. *Jones*, 10 S. & R. (Pa.) 322; *State* v. *George*, 8 Ired. (N. C.) 324; *Cooke* v. *Curtis*, 6 Harris & Johnson (Md.), 93; *Coffin* v. *Anderson*, 4 Blackford (Ind.), 395.

The court cannot, however, rule on the point, except to sustain the court below, for the reason, that the bill of exceptions as copied in the abstract of counsel, or in the transcript, as we have been able to find, does not show how or by whom the witness was attempted to be impeached.

4. Evidence in case of joint crime.

We think the tenth and eleventh grounds were well taken. Upon the theory of the State that the murder

was committed by the two Carpenters, the parts of the testimony of Sallie Hannibal and W. O. Carpenter which the court below refused to admit could not have been prejudicial to the State, as we view it, and since, upon its theory, it was a joint murder, anything bearing upon the case of one, we think, might have been admitted, provided it was not inadmissible upon other grounds.

The appellant complains that the tenth instruction given by the court at the instance of the State is inconsistent with—in fact, completely at war with—one and two given by the court at the instance of the defendant. It seems that one and two were given first, and hence the propriety of the saying that "number ten is at war with numbers one and two." Under the state of facts in the case, and the various therories predicated thereon, there is an obvious repugnancy, but we are inclined to find less fault with number ten than with numbers one and two, but since the error, viewing it in this light, was not prejudicial, at least could not have been objected to by the defendant, we make no ruling to affect this appeal, but only by way of suggestion that a more successful effort to harmonize the instructions may be made in the further proceedings in this behalf.

For the errors of the court below, pointed out in the foregoing opinion, the judgment is reversed, and the cause remanded for further proceedings.

Justices Hughes and Wood did not participate herein.